## WILLIAM S. LELAND *vs.* JOHN FELTON.

Debts due to the estate of a testator from the executor named in his will, and from a firm of which he is a member, are to be treated and accounted for as assets; although he and his firm were insolvent at the time when he accepted the trust, and although he has never charged them in his account, and an account has been allowed in which they were not included, but were mentioned as notes which it had been impossible to collect, and although he has resigned his trust, and an administrator *de bonis non* has been appointed in his place.

APPEAL from a decree of the judge of probate for the county of Suffolk, allowing the second account of the appellee, as executor of the will of Isaac Jenkins.

At the hearing in this court, at April term 1860, *Bigelow*, J., reported the following facts for the determination of the whole court: The testator died in 1857, leaving a will in which his widow, Sarah T. Jenkins, and the appellee were named as executors ; and they accepted the trust, and gave separate bonds. A part of the testator's property consisted of two promissory notes, amounting to $875.24, against the appellee ; and of eight promissory notes, amounting to $12,433.15, against the firm of John Felton & Co., of which the appellee was a mem

ber. The executors returned into the probate court an inventory of the property, including all of the above notes.

The appellee testified, subject to the opinion of the whole court as to the materiality of the evidence, that, at the time of the testator's death, both he and the firm of John Felton & Co. were insolvent, and had not enough property to pay their debts; that in 1857 he transferred to himself as executor, as security for the above notes, certain shares of the Chicago Land Company, and afterwards, in the same year, transferred for the same purpose four hundred shares of the Illinois and Wisconsin Land Company, which he believed to be ample security; that the shares of the Chicago Land Company were sold, and the proceeds, to the amount of $3001.80, applied in payment of two of the notes due from the firm; that John Felton & Co. stopped payment on the 20th of January 1859, and shortly afterwards instituted proceedings in insolvency.

It also appeared that, upon a citation for the purpose, the appellee rendered an account in the probate court, which was allowed on the 16th of May 1859, in which he did not charge himself with any of the notes above mentioned, except the two which were paid with the proceeds of the shares of the Chicago Land Company; but a schedule of the rest was annexed, amounting in all to $10,316.59, and of certain other notes, with a memorandum as follows: " The following notes are still on hand, which it has been impossible to collect up to this time. They are believed to be fully secured by four hundred shares of the Illinois and Wisconsin Land Company." Sarah T. Jenkins appealed from the decree allowing this account, but afterwards the appeal was waived. On the 13th of June 1859, the two executors named in the will resigned, and on the twentieth of the same month the appellant was appointed administrator with the will annexed, and accepted the trust; and the appellee delivered over to him all the papers relating to the estate, including the unpaid notes, and the certificates of the shares of the Illinois and Wisconsin Land Company. There was evidence tending to show that these shares were worth in the western market from $30 to $35 each.

On the 2d of January 1860, the appellee, upon a citation for the purpose, rendered a new account, in which he did not charge himself with the unpaid notes; and from the decree allowing this account the appellant appealed to this court.

*W. S. Leland, pro se,* cited *Stevens* v. *Gaylord,* 11 Mass. 256; *Winship* v. *Bass,* 12 Mass. 198; *Ipswich Manufacturing Co.* v. *Story,* 5 Met. 310; *Sigourney* v. *Wetherell,* 6 Met. 553; *Bench ley* v. *Chapin,* 10 Cush. 173; *Mattoon* v. *Cowing,* 13 Gray, 387; *Freakley* v. *Fox,* 9 B. & C. 130; *Field* v. *Hitchcock,* 14 Pick. 405.

*A. H. Fiske,* for the appellee. After the allowance of the first account, by which the appellee not only was not required to charge himself with the notes, but was allowed to return them, with other property, as still on hand and unpaid, and after the subsequent resignation of the appellee, it was too late to charge him with the amount of them. It is plain that the estate has been benefited by his acting as executor; because, otherwise, none of the notes would, or by law could have been paid, and the estate would not have received the securities which it now holds. The true reason for the cases adjudged in this state, which seem to support the doctrine that a debt of an executor to the estate of his testator becomes assets in his hands at once upon the acceptance of the trust, is that the executor cannot sue himself. It is submitted, however, that this is not an extinguishment of the debt, but a suspension of the remedy and that the remedy may be revived. But until the executor charges himself with the debt, in his account, it is only *prima facie* assets in his hands; and, upon his resignation, as the remedy to collect it is revived, the reason for treating it as assets ceases. In the present case the appellant holds in his possession the evidence of the debts, and ample security therefor. In addition to several cases cited on the part of the appellant, *Kinney* v. *Ensign,* 18 Pick. 232, was referred to.

DEWEY, J. The liability of an executor or administrator to be charged as such in his account of administration for all debts due from himself to the person upon whose estate he administers has been frequently held by this court. It was directly

45 *

affirmed in the case of *Stevens* v. *Gaylord,* 11 Mass. 269, where it was said : " As soon as the debtor is appointed administrator, if he acknowledges the debt, he has actually received so much money, and is answerable for it. This is the result with respect to an executor ; and the same reason applies to an administrator." " The consequence is, that he and his sureties in the administration bond are liable for the amount of such a debt, in like manner as if he had received it from any other debtor of the deceased." This case was followed by that of *Winship* v. *Bass,* 12 Mass. 198, to the same effect; as were also the cases of *Ipswich Manufacturing Co.* v. *Story,* 5 Met. 310, and *Sigourney* v. *Wetherell,* 6 Met. 553.

The same rule has, by analogy, been held applicable to an assignee under our insolvent laws, in *Benchley* v. *Chapin,* 10 Cush. 173, and to that of a guardian, in *Mattoon* v. *Cowing,* 13 Gray, 387.

The case of *Kinney* v. *Ensign,* 18 Pick. 232, has been sometimes urged as establishing the position that the appointment of the debtor as executor did not extinguish the debt, or discharge the further liability of the executor upon his debt as such, and therefore it was not always necessarily to be charged in the administration account. But it will be found that the court, in the opinion given in that case, fully recognize the principles of the earlier cases as to the right of those interested in the estate, to charge the executor in his administration account for a debt due from him to his testator, while they also further hold that they would not, under the circumstances of that case, make it compulsory that the same should be charged in the account as payment, where the debt was secured by a mortgage which would thereby be discharged ; and especially that this would not be required in favor of a purchaser of the equity of redemption of such mortgage, who had filed a bill in equity in which a decree to that effect was sought.

In the case at bar, the debt is acknowledged, and the same was returned in the inventory as assets, and the only inquiry is, whether there are any peculiar circumstances that should operate to take the case out of a well settled general rule. Various

reasons are urged as objections to charging the executor in this account with the amount of his indebtedness to the testator.

1. It is said that if he was ever chargeable therefor, it should have been in his first account presented and allowed by the court of probate on the 16th of May 1859. In the opinion of the court the claim was not passed upon in the adjudication and allowance of the former account, in any such manner as to preclude his being required to account therefor in the account which he is now called upon to render. The former account acknowledged the demands as still outstanding. They formed no part of the items of the account allowed as debts and credits, but were appended to the account, and described as notes which it had been impossible to collect up to that time; and which were believed to be fully secured by four hundred shares of the Illinois and Wisconsin Land Company.

2. It is further said that it is too late to charge the defendant in an account as executor for these notes after he has resigned that trust. It is true that one of the reasons early given for holding an executor chargeable in his account of administration with a debt due from himself was the fact that no other mode existed to enforce the claim, inasmuch as he was the legal representative of the creditors, and also of the debtor, and so not subject to an action to enforce payment of the same. But it will be seen from a reference to the adjudicated cases, that the principle upon which the executor and his sureties are held chargeable with his indebtedness to the testator was broader than this, and that the law gives the right to those interested to treat as assets received by the executor the amount of his acknowledged debts to the testator, upon his acceptance of the trust of executor, and returning the same in the inventory as assets of his testator. This legal liability once assumed, cannot, against the will of those interested in the estate, be divested by resigning the trust.

3. There is no legal ground of defence, in the alleged fact that the executor, at the time of taking said trust, had not sufficient property to pay his debts, including those due from him to his testator, and that one year and four months after taking upon

himself the executorship he failed and stopped payment, and soon after made application for the benefit of the insolvent laws. Having taken the office, and thereby placed himself in the position of executor, and so continued for this length of time, it is no answer now to charging his indebtedness in his account of administration that, if payment of all his other debts had been enforced, as well as this, he would have been unable to meet them.

4. Nor is this liability necessarily restricted to cases where the executor has already charged himself, in an account rendered, with his own debt to the testator. This case is similar to some of the cases already cited. But the liability assumed on the acceptance of the office of executor is that he will duly account, and such accounting includes all his acknowledged debts to the testator. The present demands were thus acknowledged and made a part of the inventory returned by him. They were not charged in his first account, but were reported in a memorandum annexed thereto as outstanding, and in the manner already stated.

Upon the whole matter, the ruling of this court is that the decree of the court of probate, brought before us by this appeal, be reversed; and that, in stating the second account of the appellee as executor, the said Felton be charged with the debts due from him, and also the debts due from John Felton & Co. to the estate of Isaac Jenkins.